IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CECILIA FRANCISCO, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 17 C 6872 |
| MIDLAND FUNDING, LLC and MIDLAND CREDIT MANAGEMENT, INC., | ) Judge Joan H. Lefkow |
| Defendants. | ) |

**OPINION AND ORDER**

Cecilia Francisco sued Midland Funding, LLC (Midland) and Midland Credit Management, Inc. (MCM) for violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Francisco and Midland have filed cross-motions for summary judgment. For the reasons stated below, Francisco's motion (dkt. 31) is granted in part and denied in part, and defendants' joint motion (dkt. 40) is granted in part, denied in part, and continued in part.[1]

**BACKGROUND**[2]

Francisco incurred a personal debt with Synchrony Bank after buying a freezer on credit. She encountered financial troubles and defaulted on the debt. Midland purchased the debt from

---

[1] The court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). As explained below, Francisco has standing under Article III. Venue is proper in this district under 28 U.S.C. § 1391(b).

[2] Unless otherwise noted, the facts set out below are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Following its regular practice, the court has considered the parties' objections to the statements of facts and includes in its opinion only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

Synchrony, and MCM was responsible for collection efforts. In February 2017, MCM began sending collection letters to Francisco, which she ignored. Eventually, Midland filed suit against Francisco in Illinois state court.

Francisco sought out legal counsel and engaged Community Lawyers Group, Ltd., a firm with extensive FDCPA litigation experience and counsel in this action. On Sunday evening, August 20, 2017, Francisco's counsel faxed a letter to MCM (addressed to Midland) that read in relevant part as follows:

> [Francisco] is represented by our firm regarding all matters in connection with the above referenced debt. Please direct any future communication regarding this account to our office. This client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, *and the debt reported on the credit report is not accurate*. . . .

(Dkt. 33-6 (emphasis added).) MCM treated the letter as a dispute of Francisco's debt and entered it into its records system one business day later, on Tuesday, August 22, 2017.

MCM reports account information to credit bureaus and follows special procedures for accounts flagged as disputed. Because MCM services millions of accounts,[3] it prepares reports of disputes in batches. MCM compiles those batches of disputed accounts twice a month, on the Monday following the first and third Sunday of each month. It then performs quality-control checks of its reports to ensure the data are accurate and sends the reports to the credit bureaus that Friday. As relevant here, MCM compiled its reports on Monday, August 21, 2017, finalized them the same day, and sent them to credit bureaus on Friday, August 25, 2017. Francisco asserts in her statement of facts that "Midland" sent account information to credit bureaus. (Dkt. 33 ¶ 16.) In support she cites only defendants' answer to the complaint, which admits that MCM sent the information but denies that Midland did (dkt. 9 ¶¶ 23–24), and one credit report, which

---

[3] In a representative four-month period, MCM received over 150,000 disputes.

does not identify who sent the account information. (Dkt. 33-7). Francisco cites, and the court has found, nothing else in the record to suggest that Midland was involved in MCM's delivery of information to credit bureaus.[4]

Because of the unfortunate but likely not coincidental timing of counsel's letter, MCM had already finalized its batch of reports to credit bureaus on August 21, 2017, before it processed Francisco's dispute on August 22. Thus, MCM reported on August 25 that Francisco owed a debt to Midland of $1,713, without reporting that the debt was disputed. Francisco's counsel obtained a copy of her credit report from Equifax on September 2, 2017, which noted the debt to Midland but did not note that it was disputed. MCM reported Francisco's debt as disputed in its next batch of reports, on September 8, 2017.

Francisco has no evidence that the incorrect August report damaged her credit score and has admitted that she does not seek financial damages. She does, however, claim psychological and even physical harm from the incident. Her only evidence is her own testimony that she experienced negative emotions and that those negative emotions contributed to high blood pressure and a heart attack she suffered in September 2017. She does not submit any medical documentation for these assertions.

Nor does the record suggest that Francisco ever viewed a credit report that incorrectly failed to identify her debt as disputed. Francisco testified at her deposition that she had seen her credit report "just one time," when she authorized her attorneys to review her credit report while preparing to send the letter to Midland and MCM. (Dkt. 33-2 at 86:23–88:9, 98:13–23.)

---

[4] Defendants' statement of facts claims that "Midland" performs MCM's quality-control checks, (Dkt. 41 ¶ 15) but cites two points in the record that do not support Midland's involvement in MCM's credit-reporting process. (Dkt. 41-10 ¶ 9 ("MCM runs quality control checks . . . ."); dkt. 45 (credit reporting policy that does not suggest Midland is involved in MCM's quality control).) Because that statement is unsupported, the court does not accept it as true.

Francisco argues that she testified to viewing her credit report "at one time" rather than "just one time." (Dkt. 58 ¶¶ 40–41.) The deposition transcript says, "Just one time," (dkt. 33-2 at 98:14) and, as that phrase was translated from Tagalog, Francisco makes no assertion that her intended meaning was lost in translation. (*Id.* at 4:2–10.)

Francisco and the defendants have filed cross-motions for summary judgment. Because Francisco's motion does not address her damages or defendants' unclean hands defense, the court considers it as seeking partial summary judgment on liability and the bona fide error defense. Defendants also seek summary judgment, arguing that (1) Francisco lacks standing; (2) Midland is not a "debt collector"; (3) any FDCPA violation was a "bona fide error"; (4) Francisco's unclean hands prevent relief; and (5) Francisco cannot prove actual damages. Finally, defendants represent, and Francisco does not contest, that Francisco has stipulated to withdrawing her Illinois Collection Agency Act count against both defendants. (Dkt. 50 at 22.)

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). When considering cross-motions for summary judgment, the

court must be careful to draw reasonable inferences in the correct direction. *See, e.g.*, *Int'l Bhd. of Elec. Workers, Local 176* v. *Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

### I. Standing

Defendants argue that the court lacks jurisdiction because Francisco does not have standing under Article III to raise a bare violation of the FDCPA. The plaintiff's standing to bring suit is a prerequisite to a federal court's jurisdiction, stemming from Article III's limitation of the judicial power to hearing "cases" and "controversies." *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1546–47 (2016). The first element of standing is that the plaintiff suffered an "injury in fact," which is "'an invasion of a legally protected interest' that is," among other things, "'concrete and particularized'" *Id.* at 1548 (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)). An injury need not be "tangible" to be "concrete," but intangible harms should have either "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" or be one that Congress considers actionable. *Id.* at 1549 (citing *Vermont Agency of Natural Resources* v. *United States ex rel.*

*Stevens*, 529 U.S. 765, 775–77, 120 S. Ct. 1858 (2000)). That said, Congress cannot create standing out of thin air, and a violation of a statute alone is not enough for an injury to be "concrete." *Id.* at 1549. The statutory violation must cause, at the very least, a "real risk of harm." *Id.* In *Spokeo*, the Court held that a bare, procedural violation of the Fair Credit Reporting Act like misreporting the plaintiff's zip code was not, by itself, a "concrete" injury. *Id.* at 1550.

The Seventh Circuit held after *Spokeo* that the statutory violation asserted here—failing to report a debt as disputed to a credit bureau in violation of § 1692e(8)—is "concrete" enough to show an injury-in-fact by itself. *Evans* v. *Portfolio Recovery Assocs.*, 889 F.3d 337, 345–46 (7th Cir. 2018). In *Evans*, counsel for the four plaintiffs all sent letters to debt collectors materially identical to the one in this case; the debt collectors all failed to report the debt as disputed to credit bureaus; and the plaintiffs sued for a violation of § 1692e(8). *Id.* at 342–43. This was enough to establish injury-in-fact because it entailed a real risk of harming the plaintiff's credit score. *Id.* at 345–46. The same is true here.

Defendants counter that Francisco cannot prove that her credit score was lowered, but she does not need to; the statutory violation alone is enough to establish standing, even at the summary judgment phase. *Id.* at 346 (affirming finding of standing on summary judgment by discussing risk of damage to credit score, not actual damage). Regardless, Francisco has damages—up to $1,000 in statutory damages that Congress imposed to compensate for violations of § 1692e(8). 15 U.S.C. § 1692k(a)(2)(A). Because courts can award statutory damages under the FDCPA without the plaintiff's proving actual damages, *Keele* v. *Wexler*, 149 F.3d 589, 593 (7th Cir. 1998), by the same token, a plaintiff does not need to prove actual damages to have standing under the FDCPA.

Defendants also argue that Francisco does not truly have standing because she falls outside the FDCPA's "zone of interests." Because her attorneys invited the violation, defendants argue, Francisco is not the type of victim that Congress intended to protect. In support, defendants cite *Stroops* v. *Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805–06 (W.D. Pa. 2016), where the court held that a plaintiff who bought cell phones for the sole purpose of suffering Telephone Consumer Protection Act violations lacked standing to sue under the TCPA. But in *Evans*, the Seventh Circuit held that the plaintiffs had standing to sue under the same statute and the same circumstances presented here. 889 F.3d at 342–43. Moreover, unlike the plaintiff in *Stroops*, Francisco did not suffer an FDCPA violation until after she encountered defendants in the ordinary course of her affairs. She did not buy a freezer on credit and default on the debt intending to suffer an FDCPA violation.

Because Francisco has standing, the court has jurisdiction.

## II. Midland's Liability

In their cross-motions for summary judgment, the parties dispute at length whether Midland is a "debt collector" under the FDCPA. But defendants also identify a more fundamental problem with Francisco's case against Midland: Francisco has not shown that Midland was involved in creating, checking, or sending the August 25 report to credit bureaus. She admits that Midland "did not instruct []or approve MCM's act of communicating information," "did not communicate any information," and "did not engage in any correspondence sent to Plaintiff or any third party regarding Plaintiff." (Midland SOF ¶¶ 54–56.) Although Francisco claims in her statement of facts that Midland sent the challenged report, she cites only defendants' answer, which denies that Midland sent it, (Francisco SOF ¶ 16; dkt. 9 ¶ 23), and the Equifax report, which does not state who reported the debt. (Dkt. 33-7). Because

7

Francisco only has evidence that MCM, not Midland, made any statements about Francisco's account to Equifax, no reasonable jury could find that Midland made any false statements.

Defendants' joint motion for summary judgment is therefore granted in part as to Midland.

### III. MCM's Liability

#### A. Debt Collector

Section 1692e prohibits "[a] debt collector" from making false statements "in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C § 1692a(6). MCM does not dispute that it attempted to collect a debt owed to Midland in this case but argues that Francisco cannot prove either that its principal purpose is debt collection or that it regularly collects debts owed to another. Francisco responds that because MCM has been found to be a debt collector in other cases in this district, MCM cannot now claim that it is not a debt collector. Francisco's argument is incorrect as a matter of law—absent some sort of estoppel, which Francisco does not argue, Francisco must prove her own case. *See Skinner* v. *LVNV Funding, LLC*, No. 16 C 7089, 2018 WL 319320, at *2 (N.D. Ill. Jan. 8, 2018) ("Plaintiff has the burden of establishing Defendant meets a statutory definition of a debt collector to succeed on her FDCPA claim.").

Despite Francisco's thin legal argument, the record is clear that MCM "regularly collects or attempts to collect . . . debts owed . . . another." 15 U.S.C. § 1692a(6). MCM admitted in its answer that it holds an Illinois license as a credit collection agency and that it "at times uses the mails and telephone to attempt to locate and/or communicate with individuals regarding their

contractual obligations." (Dkt. 9 ¶¶ 12–14.) Discovery clarified the meaning of this artful pleading: MCM acts as loan servicer for millions of debt accounts. (Dkt. 41 ¶¶ 68–69.) Many of those accounts "have gone into collection," and MCM is the entity collecting those debts. (Dkt. 53 at 10:12–13, 14:10–24.). MCM sends collection letters, (*id.* at 11:6–9), calls debtors, (*id.* at 11:10–13), and "assists" debtors with their debt, which includes "collecting payment for . . . debt." (*Id.* at 14:10–24.) And those debts are owed to another, as MCM collects on Midland's account. (*Id.* at 19:4–14.)

There is no genuine issue as to the material fact that MCM regularly collects debts owed to Midland and is therefore a "debt collector" under the FDCPA.

### B. Violation

The FDCPA prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). On August 25, 2017, MCM reported to Equifax the amount of Francisco's debt without reporting that she disputed it, which it knew or should have known because MCM had processed the dispute on August 22. MCM emphasizes that the letter was ambiguously worded to seem like an attorney-representation letter instead of a true dispute, and that Francisco never substantiated a genuine reason why she did not owe the debt. But MCM does not argue outright that the letter was not a "dispute" under § 1692e(8), nor could it. *Evans*, 889 F.3d at 346–47 ("When plaintiffs said 'the amount reported is not accurate,' they . . . *disputed* the debt. There is simply no other way to interpret this language. . . . Section 1692e(8) does not require an individual's dispute be valid or even reasonable.").

9

MCM also argues that it complied with another statute, the Fair Credit Reporting Act, which allows credit reporting agencies thirty days to investigate disputes. 15 U.S.C. § 1681i(a)(1)(A). To begin, as the Seventh Circuit has held about other FCRA provisions, "It is a different provision with different requirements. The FDCPA does not incorporate [it] or say that its requirements apply to § 1692e(8)." *Evans*, 889 F.3d at 348. The same is true here— § 1692e(8) does not mention § 1681i(a)(1)(A), and compliance with latter does not excuse noncompliance with the former. Recognizing that the FCRA does not apply, MCM argues that the FCRA is nonetheless instructive because Congress thinks it reasonable to take thirty days to investigate disputes. But taking time to investigate a dispute does not give a debt collector license to send a false report while the investigation is underway. And regardless, MCM does not claim that it sent a false report because it was investigating the dispute; it argues that it should be excused for sending a false report on August 25 because it sent an accurate one on September 8.

There is no genuine dispute as to the material fact that MCM violated § 1692e(8) when, on August 25, 2017, it "fail[ed] to communicate that a disputed debt [wa]s disputed."

C. **Affirmative Defenses**

1. **Bona Fide Error**

The FDCPA provides an affirmative defense for some unintentional mistakes. "A debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). MCM must prove (1) lack of intent; (2) bona fide error; and (3) reasonable procedures. *Evans*, 889 F.3d at 349 (citing *Kort* v. *Diversified Collection Servs., Inc.*, 349 F.3d 530, 537 (7th Cir. 2005).

MCM's procedures are laudably better than those asserted in *Evans*; unlike the debt collector there, MCM prophylactically takes what it considers ambiguous or confusing letters and categorizes them as disputes. But MCM's dispute-reporting procedures are not designed to prevent the error that occurred in this case. MCM works with such a volume of accounts that it is most practical to report disputes to credit bureaus in batches. MCM compiles those disputes on Monday and sends them to the bureaus on Friday, with a quality-control check somewhere between. Considering the volume of disputes MCM could receive or process between finalizing and delivering its batch of reports, that policy tolerates the risk of violating 15 U.S.C. § 1692e(8) exactly as it did here. Locking in reports on Monday and delivering them on Friday means that every dispute received or processed on Tuesday, Wednesday, Thursday, and Friday of the reporting week (of which there are likely thousands) might not be noted in Friday's report to credit bureaus. Francisco's letter fell through the cracks because MCM designed a system with cracks. No reasonable jury could find that MCM's procedure was "reasonably adapted to avoid" the error that occurred in this case. 15 U.S.C. § 1692k(c).

### 2. Unclean Hands

MCM moves for summary judgment on its unclean hands defense. Francisco did not seek summary judgment against this defense in her motion or memorandum, instead raising it for the first time in her reply brief. But in response to MCM's motion and in her reply in support of her own motion, Francisco persuasively argues that unclean hands is not a defense to a violation of 15 U.S.C. § 1692e(8). Many district courts, including in this district, agree with Francisco. *See McCabe* v. *Crawford & Co.*, 272 F. Supp. 2d 736, 749 (N.D. Ill. 2003) (granting summary judgment against unclean hands defense to FDCPA); *see also, e.g.*, *Nyberg* v. *Portfolio Recovery Assocs., LLC*, No. 3:15-cv-01175-PK, 2016 WL 3176585, at *6 (D. Or. June 2, 2016) ("Unclean

11

hands is not a proper defense to an FDCPA claim."); *Johnson* v. *Nationstar Mortg., LLC*, No. 2:17-cv-199-FtM-99MRM, 2017 WL 3705838, at *3 (Aug. 28, 2017) ("The Court does not see—and defendant cites no case law in support—how a debt collector may defend itself from liability for its practices by alleging that the debtor put the parties in the situation in the first place."). *But see, e.g.*, *Young* v. *LVNV Funding, LLC*, No. 4:12CV01180AGF, 2013 WL 275603, at *1–2 (E.D. Mo. Jan. 24, 2013) (denying motion to strike unclean hands defense). An unclean hands defense is also in tension with circuit precedent holding that the FDCPA solely focuses on the debt collector's actions, *see Keele*, 149 F.3d at 595–96 (FDCPA applies to debt-collection practices against consumers who fraudulently incurred debt), and that the FDCPA imposes strict liability, *see, e.g.*, *Randolph* v. *IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("Debt collectors may not make false claims, period.").

Although the court is inclined on the briefing so far to grant summary judgment in Francisco's favor *sua sponte*, MCM must be given notice and a fair opportunity to respond before summary judgment is entered. *Simpson* v. *Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999) (court may award summary judgment *sua sponte* after providing notice and opportunity to respond). Francisco raised this argument in response to MCM's motion (which did not give MCM notice that summary judgment could be entered against it) and in her reply in support of her own motion (which did not give MCM an opportunity to respond).

The defendants' motion is therefore continued as to the unclean hands affirmative defense. MCM is given 14 days to show cause why summary judgment should not be awarded *sua sponte* against the defense. MCM need not cite cases it has already cited on this issue.

## IV. Damages

Francisco has moved for summary judgment only as to liability and one of MCM's affirmative defenses. MCM, however, seeks summary judgment on the issue of damages as well. MCM correctly observes that Francisco has not adduced any evidence that her credit rating decreased after the August 25, 2017 report, and that she has admitted that she cannot prove financial losses. (Midland SOF ¶ 36; dkt. 33-8 at 2 ¶¶ 1–2.)

Although Francisco has some evidence of emotional damages, she does not have enough for a jury to award actual damages. "Where . . . the plaintiff's own testimony is [her] only evidence of emotional distress, '[s]he must explain the circumstances of [her] injury in reasonable detail' and not rely on conclus[ional] statements, unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.'" *Wantz* v. *Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (quoting *Denius* v. *Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003)), *abrogated in other part*, *Safeco Ins. Co. of Am.* v. *Burr*, 551 U.S. 47, 127 S. Ct. 2201 (2007); *see also King* v. *CM Ass'n Grp.*, No. 11 C 7499, 2012 WL 400787, at *2 (N.D. Ill. Feb. 6, 2012) (applying *Wantz*'s FCRA emotional-damages rule to FDCPA claim).

Sending one report to credit bureaus correctly reciting the amount of the debt but incorrectly omitting that the debt is disputed is not "inherently degrading." Francisco's only evidence of emotional injury is her own testimony, and she does not describe her injury in "reasonable detail." She testified to losing sleep and feeling stressed, sick, hot-tempered, annoyed, humiliated, embarrassed, sad, and hopeless. But she did not substantiate these claims beyond the bare fact of claiming to experience these emotions.

Francisco more specifically details a physiological injury—that her negative emotions worsened her already-high blood pressure and contributed to a heart attack she suffered in September 2017. But she "bears the burden of proving that [s]he did, in fact, suffer actual damages and must establish a reasonable basis for the computation of those damages." *Assaf* v. *Trinity Med. Ctr.*, 821 F.3d 847, 848 (7th Cir. 2016). And at summary judgment, she must include some of that evidence in the record. *Grant* v. *Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial."). Francisco has not produced any medical records to support her claim that that stress caused her heart attack, or even that she had a heart attack. A jury could not award actual damages based on this record. Regardless, she did not allege any physical harm in her complaint or seek to amend her complaint to conform to the proofs. (Dkt. 1 ¶ 36.)

Francisco does not have enough evidence to prove at trial that the FDCPA violation caused any of her claimed injuries. "Only losses flowing from an FDCPA violation are recoverable as actual damages." *Thomas* v. *Law Firm of Simpson & Cybak*, 244 Fed. App'x 741, 743 (7th Cir. 2007). In her deposition, Francisco claimed that her emotional damages were caused by other consequences of defaulting on a debt: the existence of the debt; legal debt collection efforts; and reporting the debt (full-stop), rather than reporting the debt without noting it as disputed. (*See, e.g., id.* at 112:10–13 ("It was just when they were really hammering me to . . . respond to them that it started really getting worse . . . ."); *id.* at 120:6–7 ("[I]f I receive a phone call, then, yeah, I get upset, annoyed."); *id.* at 124:8–11 ("Q. [W]hen did my clients make you feel that way? A. . . . The moment they report me to the credit bureau."); *id.* at 126:16–18

14

("Q. Were you angry at them because they filed a lawsuit against you? A. Yes."); *see Sheriff* v. *Gillie*, 136 S. Ct. 1594, 1603 (2016) (noting § 1692e "does not protect consumers from fearing the actual consequences of their debts"). Indeed, there is insufficient evidence in the record from which a jury could reasonably find that Francisco even saw a credit report that inaccurately listed the debt as undisputed. Francisco testified to seeing her credit report "just one time," when her attorneys pulled the report before preparing the letter to defendants. (Dkt. 33-2 at 86:23–88:9, 98:13–23.)

Nonetheless, the court cannot grant summary judgment because Francisco also seeks statutory damages under 15 U.S.C. § 1692k(a)(2)(A) in her prayer for relief. (Dkt. 1 ¶ 39(C).) "The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele*, 149 F.3d at 593. Neither party has briefed the issue of statutory damages, and "§ 1692k(a)(2) provides for trial by jury in determining statutory additional damages," *Kobs* v. *Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998), which both parties have demanded. (Dkts. 1, 9.)

## V.  Illinois Collection Agency Act

Defendants represent that Francisco has stipulated to withdrawing count II of her complaint, a claim under the Illinois Collection Agency Act. (Dkt. 50 at 22.) Francisco did not respond to that characterization. The court treats Francisco's silence as accepting the characterization. The court therefore treats count II of the complaint as withdrawn by consent under Fed. R. Civ. P. 15(a)(2).

## CONCLUSION AND ORDER

For the reasons stated above, there are no genuine issues on the following material facts:

1. Cecilia Francisco has standing;
2. Midland Funding, LLC did not violate the FDCPA;
3. Midland Credit Management, Inc. is a debt collector;

4. Midland Credit Management, Inc.'s August 25, 2017 report to credit bureaus violated 15 U.S.C. § 1692e(8);
5. The violation was not excusable under 15 U.S.C. 1692k(c);
6. Cecilia Francisco did not suffer any actual damages from the violation.

Francisco's motion for summary judgment is therefore granted as to Midland Credit Management, Inc. and denied as to Midland Funding, LLC. Defendants' joint motion for summary judgment is granted as to Midland Funding, LLC's liability and the lack of actual damages and denied as to MCM's liability and the bona fide error affirmative defense.

Defendants' joint motion is continued as to the unclean hands defense. Midland Credit Management, Inc. is given 14 days to show cause why summary judgment should not be granted *sua sponte* against that defense. Hearing is set for March 12, 2019 at 11:00 a.m. for ruling on the unclean hands defense and setting a trial date. The parties are directed to discuss whether this case can be settled and report at the March 12 hearing.

Count II of the complaint is withdrawn.

Date: February 8, 2019

_____
U.S. District Judge Joan H. Lefkow